The Judges pronounced their opinions.
JUDGE TUCKER
stated the case; in the course of which he observed that the defendant, Sarah Chichester, by answering the allegations of the bill generally, without confining herself to the matters a discovery of which was sought, might, perhaps, according to some authorities, (g) be considered as waiving the benefit of her demurrer. He was inclined, however, when sitting as a Judge of a Court which professes to soften the rigours of the law, not to refuse to a party the same latitude •of defence which our statutory law now indulges in Courts of Daw.
He then proceeded as follows:
The principal point relied on by the counsel for the appellant is, that a Court of Chancery has no jurisdiction over this case, and, therefore, that the decree is erroneous in overruling the demurrer and granting relief: for although the complainant might have been entitled to the discovery sought, he was not entitled to any relief. And, among the arguments urged on this point, it was more than once insisted on that Mrs. Vass being dead, and the promise being literally to do equal justice to all -his daughters, as fast as it should be in his power with convenience, no suit or action either at law or in equity will lie upon this promise. And a further reason for this objection was, that Mr. Chichester might have given his daughter land, if he had chosen so to do; in which case, as she died without ever having a child, Doctor Vass could not even have a life estate therein ; and moreover, that Chichester had his whole life to perform his promise in; and having survived his daughter, and being moreover her next heir, it would be doing a vain thing to compel him to make a conveyance which would be of no benefit to the complainant under these circumstances.
“It will not, I presume, be denied, that a promise to do a moral action founded upon a good and sufficient, or valuable consideration, actually given or performed in pursuance of such promise, is binding upon the party making the same, and may be enforced, according to the nature of it, either in a Court of Daw or Equity. Of course, if the law cannot equity ought to enforce it. Taking then the position, that an action at law cannot, under the circumstances of the present case, be maintained upon this promise, as contended for, I will consider whether this promise contains such ingredients as that a Court of Equity ought to grant the relief sought.
The following principles appear to me to require no comment or illustration.
1st. That a promise made by a father to a person, who seeks an alliance with his daughter is a promise made in consideration of marriage, if the marriage be after-wards had with his consent.
2d. That although such promise may literally import a provision to be made for the daughter; yet, being made to the intended husband, it must be construed to be one which shall enure to the benefit of both, unless there be some special reservation to the contrary ; manifesting a clear intention to preclude him from participating in the benefit thereof.
If these principles be correct, the letter of the 12th of April, 1789, must be considered as a promise made by Mr. Chichester to Doctor Vass in consideration of his intended alliance with his daughter, which, according to the expressions contained in the Doctor’s letter to him of the 10th of April, depended upon Chichester’s consent, the young couple being determined to do nothing that might create the least uneasiness or anxiety to him; but to bear their disappointment with all possible fortitude. No repugnance to this consent is expressed by Mr. Chichester, nor any terms or settlement at any time hinted at, in any 112 of his letters to the Doctor, “or others on the subject. It must therefore be taken as a promise to enure to the benefit both of the future husband and wife. Even when Mr. Chichester had it in contemplation to purchase a plantation, or a lot and house in Colchester or Dumfries, or to give a plantation which he had in Shenandoah County, not a word is said which conveys the most distant hint that he meant to make the conveyance to his daughter, separately, or to require a settlement from Doctor Vass, before he should give his daughter any thing. In his letter of January Sth, 1790, he tells him nothing in his power, without distressing himself, shall be wanting to assist the Doctor in settling to his satisfaction. In the same letter he offers to purchase a lot in Colchester or Dumfries in fee-simple, or do any thing in his power in any place the Doctor should think most agreeable. Surely these expressions manifest an intention to do something that should enure to the Doctor’s benefit, and must be referred to the origi *52 nal promise, and as manifesting the intention of it. And, though it should be true (which it is unnecessary to decide) that Mr. Chichester had his whole life to perform any part of tliat promise, since itwas made to depend upon his convenience; and that he might have given his daughter land, only, and not money, or other personal property, yet if he had such an election, he made no use of it, and the promise ought to be enforced in such a manner as may be most beneficial to the person to whom it was made, having regard to the measure of his bounty to his other daughters, to determine that which was due to the others. As this was a matter not within the privity of Doctor Vass, if the performance were refused upon the ground that the contract was not obligatory, (as seems to have been the case according to the testimony of one witness,) or remained unperformed at the time of Mr. Chichester’s death, a Court of Equity was certainly the proper tribunal to resort to for a discovery of the advances made by Mr. Chichester to his other daughters, as the standard by which to ascertain the measure of the 113 benefit claimed by *his son-in-law; as also for a discovery of the funds out of which the relief sought was to be given; for, if Mr. Chichester had died leaving no estate whatsoever undisposed of, but it should appear that, after the promise made to Doctor Vass, he had given property to his other daughters, would not that property be liable to contribution, as far as it would go, to make the portion of Mrs. Vass equal to that of her sisters? Or, if he had died intestate, leaving only lands into which the daughters or their husbands had entered as his heirs, would not those lands be liable to such a contribution for the portion promised the remaining daughter? Again, the nature and quality of the property or estate given to the other daughters, with the conditions (if any) under which it was given to the other daughters, might form a proper subject of inquiry in a Court of Equity, in order to enable that Court to do, what Chichester promised to do, “equal justice” among all the daughters. A discovery of all these things was therefore very properly required; and until that discovery were made, the Court could not possibly judge whether the complainant was entitled to relief, or not. The case exhibited by the bill does not therefore furnish, in my opinion, any proper or reasonable ground for the demurrer, which is confined to the relief sought; of the propriety of granting or refusing which the Court could not possibly judge until the merits were brought before it by the answer and other evidence in the cause. I therefore think the Court decided properly in overruling the demurrer. That obstacle once removed, the complainant’s right to relief, either as an original party to the contract, or as the administrator of his wife, was unquestionable.
I have before said that if a promise be made to two persons of different sexes, in consideration of a marriage to be had between them, if they marry, the promise shall enure to the benefit of both. And this Upon the principle of that unity of persons which the law establishes between them upon their marriage, and that upon the 114 principles of the common "'law; for, by that, if a reversion be granted to a man and a woman, and their heirs, and before attornment they intermarry, and then attornment is made, the husband and wife shall have no moieties: so, if a feoffment be made to a man and a woman, with a letter of attorney to make livery, and then they intermarry, and livery is made secundum formam chartas, in that case also it is said they have no moieties. So, if an estate were made to a villein, and his wife being free, and to their heirs, although they have several capacities, viz. the villein to purchase for the benefit of the lord, and the wife for her own, yet, if the lord of the villein enter, and the wife survive her husband, she shall enjoy the whole land; because there are no moieties between them:(a) and that this is the true reason of the law, appears from this; that if a joint estate be made to a husband and wife and to a third person, in that case the husband and wife have in law but one moiety, and the third person shall have the other moiety.(b) And Judge Blackstone, speaking upon the same subject, says, that if an estate in fee be given to a man and his wife, they are neither properly joint-tenants nor tenants in common; for husband and wife being considered as one person in law, they cannot take the estate by moieties; but both are seised of the entirety, per tout and non per my; the consequence of which is, that neither the husband nor wife can dispose of any part without the assent of the other, but the whole must remain to the survivor, (c) The case of Back v. Andrews, 2 Vern. 120, is to the same effect, (d) According to these authorities, and particularly the latter, it would appear that if there be a specific promise of lands to a man and a woman, in consideration of their intended marriage, and they afterwards marry, and the conveyance be not made according to the promise; the survivor, in whom the whole interest and estate would have vested if there had been a conveyance made during the life of both, would be well entitled to come into a Court of Equity for a conveyance of the whole estate to himself or herself. How far the second section of = the act concerning joint tights 115 *and obligations, (e) may be considered as operating on this case, so as to destroy the principle of entirety, • is a matter which may hereafter deserve great consideration. But, should it be determined in the affirmative, still it would seem that the survivor might well come into a Court of Equity for a conveyance,[if not of the whole, at least of a moiety. Judge Pendleton, in delivering his opinion on this very case, when before this Court on a former occasion, speaking of the promise contained in Col. Chichester’s letter, says, “If it were considered merely as a promise of a personalty, that right would vest, asa joint interest, in the husband and wife, until reduced *53 into possession, and go to the survivor, if either died before that happened.” This perfectly accords with what I meant to advance upon this subject. In the case of Elliott v. Collier,(a) where a bill was brought by the representative of a husband, who died without administering to the personal estate which the wife had in her own right, for the wife’s share of her father’s customary estate, as a citizen of London, Lord Hardwicke declared that the plaintiff was entitled to a decree for the same, notwithstanding the husband had not taken out letters of administration, (b) From these authorities, strengthened by our own act concerning wills, &c. which expressly establishes the priority of the husband’s right to administer on the estate of his wife, and exempts him from making distribution of it, (c) I conceive it was not necessary for Doctor Vass to administer upon his wife’s estate, in order to entitle him to bring this bill; and that, upon the whole, the decree overruling the demurrer, and giving relief, as prayed for, ought to be affirmed, after correcting the error in the rate of interest, which, perhaps, was the •effect of inattention.
JUDGE ROANE.
Having heretofore given my opinion upon the merits of this case, I shall not enter into them at present. On those merits I am content to affirm the decree; merely making the change which has been suggested in relation to the interest. With respect to the jurisdiction 116 *of the Court, under the actual circumstances of the case, and the allegations of the bill before us, we are undoubtedly justified in sustaining it, by the decisions in this Court, if not by those of England. The case of Pryor v. Adams is a stronger case than the present on the point of jurisdiction, and is perhaps fully justified, among others, by the case of Atkins v. Farr, 1 Atk. 287.
JUDGE FLEMING.
On the decision of the action at law, between the same parties, and on the same subject, by this Court, all the Judges seemed of opinion that there was sufficient evidence of a marriage promise, on the part of the appellant, to bind him to fulfil it; but, that the appellee failed in his suit, from an incurable defect in the declaration; in omitting to aver that the appellant had made advances to some one, or more, of his daughters, to a certain amount; and that it was convenient for him to make the like advancements to the wife of the plaintiff.
The counsel for the appellant in the present case, stated several points for the consideration of the Court. First, that a Court of Equity had no jurisdiction, it being a proper subject for* a Court of Law; but if the suit be sustainable, as a bill of discovery, the plaintiff, having obtained the discovery sought for, ought to have gone into a Court of Law for relief. And with respect to the merits, it was contended, 1st. That there was no proof of a promise, binding either in law or equity; 2. That if the letter of the 12th April, 1789, should be construed to amount to a promise, the appellant had his whole life to perform it in; as the letter is qualified with the expression that he would endeavour to do his daughters equal justice as fast as it should be in his power, with convenience; 3. That an advancement to the daughter in land, would have been a complete fulfilment of the promise, and that, had such an advancement been made, the land would have immediately descended to the appellant, 117 on the death of the daughter, *without having issue, born alive, to entitle the husband to hold the land, as tenant by the curtesy.
The case has been so fully and ably discussed by the Judges who have preceded me, particularly by Judge Tucker, that I shall add but little to what has been already said on the subject.
With respect to the jurisdiction of the Court, this is clearly a bill of discovery, to ascertain what advances had been made to the other daughters by the father, either in his life-time, or by his last will and testament: and, that discovery being made, the only remaining question is whether the complainant was bound to dismiss his bill, and seek redress by a new suit, in a Court of Law? Mr. Wickham cited some English authorities that seem to favour the doctrine; but I believe the uniform practice in this country has been otherwise; especially where the subject matter is within the cognisance of a Court of Equity, and there be no latent facts, to be inquired of by a Jury, necessary to be found, in order to enable the Court to give a correct decision. And, even in such a case, the general practice is, for the Court of Chancery to direct an issue to try any particular uncertain fact that may be thought material in the cause. In the present case there was sufficient disclosed in the answer of the defendant to enable the Court to determine what sum would-place the deceased wife of the complainant, or her representative, who was her surviving husband, on an equality with the other daughters of Richard Chichester.
As to the first point, on the merits, I have no doubt but that the letter of the 12th of April, 1789, amounted to a marriage promise; but, say the counsel, Richard Chichester had his whole life to perform his promise in: but that position is not admitted. His promise was, that he would do equal justice to all his daughters, as fast as it was in his power with convenience; the true meaning of which was, that he would do it in a reasonable time, taking into consideration the circumstances of his 118 estate, and the length of xtime that elapsed between the marriages of his other daughters, and his advances to them respectively. But we find that he never performed it at all, not even by his last will. And, as to his having the right to make the advancement in land, that is not denied, provided it had been in value equivalent to the advancements to his other daughters. But, not having made such, nor any other advancement to Mrs. Vass, except a negro girl, and some other trifles, I concur in the opinion *54 that Vass was entitled to recover a sum of money equal in value to the advances made to the other daughters.
But there seems to be an error in the decree, in giving six instead of five per cent, interest on the sum decreed; the decree must be reversed, and corrected so far as respects the interest, and affirmed as to the residue.

 Mitf. 171; 3 P. Wms. 80; 2 Atk. 157.

 Co. Litt. 187, b.

 Litt. sect. 291.

 2 Bl. Com. 182.

 Prec. in Ch. 1, S. C.; 2 Eq. Ca. Abr. 230, S. C.

 1 Rev. Code, c. 24.

 3 Atk. 526.

 1 Wils. 168; 1 Vern. 15, S. C., 1 P. Wins. 380, 381; S. P. Harg. Notes on Co. Litt. 351, S. P.

 Laws Virg. 1794, c. 92, s. 27, 28; 1 Call, 1, Cutchin v. Wilkinson.